IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROSE MARIE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-0409-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for Supplemental Security Income ("SSI") benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in November 1987 and completed the eighth grade; she initially alleged she became disabled in June 2000 due to a combination of depression, PTSD, and anger issues. However, SSI benefits are not available prior to the month following the month in which the application was filed. Plaintiff filed her application in March 2010, so she had to be disabled on or after April 1, 2010 to qualify for SSI benefits.

The Record reflects Plaintiff was in and out of foster care and residential care facilities as a child. She testified she was placed in residential care due to fighting and other destructive behavior. She was last released from residential care when she was eighteen, which would have been in late 2005 or early 2006. While in care she was taught how to control her anger and prescribed medication; she described that her ability to "better control" her emotions was "off and on" and the medication helped "[s]ometimes." R. at 35. She sought treatment in 2008 because she was having

homicidal thoughts but there is no evidence she was institutionalized at that time. R. at 38.

Now, Plaintiff gets angry approximately once every other month, with her anger triggered by others telling her what to do or by being called derogatory names. R. at 38-39. She continues to take medication, although she last took them two or three months before the hearing. R. at 36. She is able to care for herself, has no physical limitations, and interacts with friends and her cousin. R. at 36-37, 41-42. She testified she does not believe she can work because she does not get along with others and might get angry if a supervisor tells her what to do. R. at 33, 39. She is currently scheduled to receive outpatient treatment monthly and is attending computer classes through vocational rehabilitation. R. at 43-44.

Plaintiff's medical records reflect that she began receiving treatment at Valeo Behavioral Health Care in July 2010, R. at 310-71, at which time she was diagnosed with PTSD. R. at 316, 319. She was not considered a danger to herself or to others. R. at 314. Plaintiff attended therapy sessions and the reports from those sessions are relatively unremarkable, except as they relate to Plaintiff's anger with her brother and his involvement in events that caused two of her children to be removed from her care. During the course of her treatment Plaintiff was prescribed medications, and the records confirm her testimony that these medications were effective in decreasing her symptoms. E.g., R. at 354. Her GAF was consistently determined to be 55. The last record of a visit to Valeo appears to be from the middle of 2011.

Meanwhile, in June 2010 Plaintiff underwent a consultative psychological exam performed by Dr. Lorelei Ammons. This would have placed the examination during the time Plaintiff was encountering problems related to the custody of her two oldest children. In a section entitled "Clinical Assessment Regarding Ability to Work," Dr. Ammons wrote that Plaintiff

> shows adequate attention and concentration abilities. She does show
> some difficulties with judgement [sic] and independent functioning in
> relation to cleaning her home and ability to purchase adequate food for
> her family. She appears to be exhibiting situational depressive symptoms
> which began as a result of her children being placed into SRS custody . . .
> [Plaintiff] appears to have the ability to perform simple work tasks,

2

> although she does not show ability to relate effectively with co-workers and supervisors.

R. at 287. Later in the same month, a psychologist from the state agency (Dr. George Stern) completed both a Mental Residual Functional Assessment and a Psychiatric Review Technique Form. The first document indicates Plaintiff suffers from no marked limitations, but is moderately limited in her ability to understand, remember and carry out detailed instructions and interact appropriately with the general public. R. at 290-94. The second form noted Plaintiff suffered from depressive disorder and situational depression due to the situation with her children. R. at 290-309.

The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to simple, routine, repetitive tasks, needed to avoid "fast-paced production requirements," and could make only simple work-related decisions. The RFC also provided that Plaintiff could not interact with the public and could have only occasional supervision and only occasional interaction with co-workers. R. at 14. In making this finding, she considered the entire record and gave significant weight to the assessments from Dr. Ammons and Dr. Stern. R. at 15-17. Based on testimony from a vocational expert ("VE"), the ALJ found Plaintiff could work at a variety of jobs in the national economy. R. at 18.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

All but one of Plaintiff's arguments attack the ALJ's RFC determination or are predicated on a finding the RFC determination was incorrect. Most of those arguments constitute efforts to suggest Plaintiff is completely incapable of taking instructions from or interacting with anyone. She contends the ALJ erred in failing to accept Dr. Ammons' and Dr. Stern's assessments in this regard, particularly after the ALJ determined their opinions were entitled to great weight. In particular, Plaintiff points to Dr. Ammons' statement that Plaintiff "does not show ability to relate effectively with co-workers and supervisors" and from this concludes the ALJ was obligated to accept this assessment as true, find Plaintiff lacked *any* ability to interact with co-workers and supervisors and was thus compelled to conclude Plaintiff could not perform work. The problem is that other portions of the Record supported the ALJ's findings on this point, including notably the treatment notes from Valeo. While Plaintiff had difficulty interacting with others at times, those notes do not reflect the total inability to do so Plaintiff now advances. Even Plaintiff's testimony does not support a limitation of the severity she now posits – which undercuts her related claim that the ALJ erred in failing to find her credible. Even if believed, Plaintiff's testimony does no more than suggest Plaintiff has difficulty working with others and accepting instruction – and this limitation was accounted for in the RFC.

Plaintiff also argues the ALJ failed to fully develop the Record, but does not explain what inadequacy exists that created the need to develop the Record further. The ALJ had all of Plaintiff's records. Contrary to Plaintiff's intimation, the need to further develop the Record was not triggered by the ALJ's decision to not fully accept a portion of the consulting psychologists' opinions in favor of more complete information from elsewhere in the Record.

### III. CONCLUSION

The Commissioner's final decision is affirmed.
IT IS SO ORDERED.

                                                            /s/ Ortrie D. Smith
                                                            ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 19, 2014                      UNITED STATES DISTRICT COURT